UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HOWARD KAPLAN,
    Plaintiff,

v.

WEND MANAGEMENT, INC.,
WENDY'S OLD FASHIONED
HAMBURGERS OF NEW YORK,
    Defendants.

CIVIL ACTION NO. 104-CV-10856-MEL

## PLAINTIFF, HOWARD KAPLAN'S, OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS COUNT II OF HIS COMPLAINT

The Plaintiff, Howard Kaplan ("Kaplan") brought causes of action under the Massachusetts and federal public accommodations laws, 42 U.S.C. § 12182 and M.G.L. c. 272 § 98 against the Defendants', Wend Management, Inc. ("Wend") and Wendy's Old Fashioned Hamburgers of New York ("Wendy's") for failing to provide accommodations for his disability at their drive thru windows. The Defendants now move to dismiss the state claim. Kaplan opposes the Defendants' Motion to Dismiss Count II of his Complaint because, contrary to the assertions of the Defendants, Chapter 272, § 98 does provide a civil remedy against an employer whose employees violate its provisions. The civil remedy is directly stated within the statute. Furthermore, Chapter 151B provides for civil remedies for violations of Section 98. Thus, Section 98 provides a civil cause of action against entities whose employees violate its provisions in addition to criminal penalties.

## **FACTS**

Kaplan is profoundly deaf. He has a **limited** ability to read lips and to speak. His speaking voice is unclear and difficult to understand. His primary method of communication is American Sign Language or writing. Complaint, ¶¶ 1 and 2.

On April 29, 2001, Kaplan and a friend, Wally Carlson ("Carlson"), drove to Wendy's Restaurant at 30 Turnpike Road, Westborough, Massachusetts. Carlson is also deaf and does not speak or read lips. Kaplan and Carlson sought to buy food by using the drive through. Due to their disabilities, they could not use the microphone to order food. Complaint, ¶¶ 3-5.

They attempted to order food by driving to the pick-up window where there was an employee to whom Kaplan could give a written description of his order. Kaplan has ordered food this way at other fast food restaurant drive through windows. Complaint, ¶ 11. After Kaplan had difficulty having his order taken by the employee at the window, the manager of the restaurant, Debra Nichols, came over. Kaplan attempted to communicate to Nichols that he is deaf and attempted again to order his food in writing at the pickup window. Although it is obvious that Kaplan is deaf, Nichols spoke angrily to him and angrily gestured for him to go around to the microphone to submit his order. Kaplan repeated that he is deaf and asked again for his food. Nichols responded with more speaking and angry gestures. Kaplan gestured and asked for a pen and paper so that he could communicate with Nichols. Nichols refused to provide him with a pen or paper. The interchange between Kaplan and Nichols continued for several minutes. During the interchange, Nichols threatened to call the police. Complaint, ¶¶ 13-20.

Ultimately, Kaplan was unable to order food at the pick-up window, despite his attempt to communicate to the employee at the window that he is deaf and needs to submit his order in writing. Complaint, ¶ 12. Because the Defendants failed to adequately train their employees and managers as to how to accommodate deaf or mute individuals attempting to patronize their facilities, the Defendants failed to accommodate Kaplan's disability at the drive-thru. Complaint, ¶¶ 20-23.

Pursuant to federal and state law requirements, Kaplan has exhausted his administrative remedies by filing a complaint with the Massachusetts Commission Against Discrimination. Complaint, ¶ 24.

## ARGUMENT

In deciding a motion to dismiss, the court is to assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 36 (1st Cir. 2001) (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir.1998)). The district court must construe the complaint liberally. Viqueira v. First Bank, 140 F.3d 12, *16 (1st Cir. 1998). Only if the complaint, so viewed, presents no set of facts justifying recovery that it may be dismissed. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). The Defendants' Motion does not overcome this standard which is favorable to Kaplan.

The Defendants' entire argument rests upon the faulty premise that Chapter 272, § 98 is solely a criminal statute, and thus they cannot be held liable under it for "criminal acts of their employees." Their argument fails on two counts. First, Section 98 provides for a civil remedy as well as criminal sanctions for violations of its provisions. Second, Section 98 expressly incorporates Chapter 151B which specifically provides for a civil

remedy when a "person, **employer**, labor organization or employment agency" violates Section 98. M.G.L. c. 151B, § 5. For these two reasons, Section 98 is not solely a criminal statute, and the Court should deny the Defendants' Motion to Dismiss.

I.  **Section 98 Provides for a Civil Remedy.**

   A.  **Section 98 provides for damages as set forth in Chapter 151B, §5**

Although Chapter 272 also provides for criminal penalties, the provisions of Section 98 include a civil remedy for violations:

> Whoever makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, sexual orientation…deafness, blindness or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in any place of public accommodation…shall be punished by a fine of not more than twenty-five hundred dollars or by imprisonment for not more than one year, or both, **and shall be liable to any person aggrieved thereby for such damages as are enumerated in section five of chapter one hundred and fifty-one B**;….All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation….**This right is recognized and declared to be a civil right**. [emphasis added]

M.G.L. c. 272, § 98. By conferring liability for damages available under Chapter 151B, and by conferring civil rights status on public accommodations, Section 98 creates a civil cause of action against "whoever" violates the statute. Section 98 "establishes both criminal penalties and civil liability" when one of its provisions is violated. Commonwealth v. Umberto U., 54 Mass.App.Ct. 1118, n. 5 (2002) (unpublished—attached as **Exhibit A**); Webster v. The TJX Companies, Inc. d/b/a TJ Maxx, 2004 WL 1431055 (Mass.Super. April 23, 2004) (attached as **Exhibit B**) (Chapter 272, § 98 provides for civil remedy for damages against the defendant). Webster is directly on point and defeats the Defendants' claims that they are excused from liability. In that

4

case, the plaintiff, a black woman, claimed that a store employee treated her differently than white customers, and she sued TJX for damages under Chapter 272, § 98. She was permitted to pursue this claim against the corporate defendant.

### B. Massachusetts law is clear that corporations are vicariously liable for civil rights violations of their employees

Section 98 is explicit that the right to equal access to places of public accommodation is a civil right. The law in Massachusetts is settled that corporations can be vicariously liable for civil rights violations committed by their agents when the agents are acting in the scope of their employment. Sarvis v. Boston Safe Deposit and Trust Company, 47 Mass.App.Ct. 86, 97 (1999); appeal denied, 430 Mass. 1106. The Defendants' argument that they cannot be liable for criminal acts of their employees rests on the premise that the individual employees' actions can be separated from their corporate actions. However, Sarvis recognizes that a corporate entity can only act through its agents and that corporate liability is necessarily vicarious. Id. at 96. There is no question that the employees in this case, one who is a manager, are the Defendants' agents. In its decisions in Section 98 cases, the MCAD has gone so far as to find liability against corporate entities for acts of non-employees who are considered agents.[1]

Here, the Plaintiff alleges that the Defendants failed to provide a means by which he and other deaf or mute individuals could use Wendy's drive throughs and failed to

---

[1] In Floyd v. Forest Hill Cab Company, 87-BPA-0055 (1993) (reversed on other grounds), the MCAD found an agency relationship between a taxi driver and the taxi company because the driver was acting within her authority when she refused a black man a ride even though the driver was not an employee. Through this relationship, the MCAD held the taxi company liable for the driver's violation of Section 98. Attached as **Exhibit C**.

In Rome v. Transit Express et al, 94-SPR-0007 (1997), the MCAD found that a bus driver was the agent of the transit authority, even though the transit authority had no control over his hiring, training or supervision, because the transit authority owned the bus the driver drove and had a duty to protect passengers on its buses from unlawful discrimination. The MCAD refused to allow the transit authority to "evade liability for the unlawful actions of the driver of its bus." Attached as **Exhibit D**.

adequately train their employees and managers as to how to accommodate deaf or hard of hearing individuals attempting to patronize their facilities. The Defendants' employees were acting within the scope of their employment and enforcing the Defendants' protocol—not committing "rogue" acts.[2] As Sarvis recognizes, the Defendants must be liable civilly when their employees carry out a protocol which violates a civil rights statute. To find otherwise would exempt all corporate entities from liability for civil rights violations. As a civil rights statute, Section 98 is remedial and must be interpreted liberally. Its interpretation cannot shield a principal for a civil rights violation committed by an agent. Sarvis, 47 Mass.App.Ct. 86, 97.

The cases upon which the Plaintiff relies, Webster and Umberto U., follow the Appeals Court's reasoning in Sarvis. In contrast, the Defendants rely on two cases that contain no explanation of their reasoning and whose conclusions were overruled by Sarvis. The first case, Jones v. City of Boston, 738 F.Supp. 604 (D.Mass. 1990), was issued nine years prior to Sarvis and therefore, Sarvis overruled it.[3] Lopez v. Howth, Inc., 2002 WL 31677202 (Mass.Super. Oct. 23, 2002) relies upon Jones to dismiss the Section 98 claim without explaining or even mentioning that Jones was overruled by Sarvis.[4] Although the

---

[2] Kaplan has alleged sufficient facts in his Complaint to demonstrate that the acts of the Defendants' employees are not "rogue" acts. To the extent the Court considers that it is not sufficiently alleged in the Complaint, he seeks permission to amend his complaint.

[3] Jones was decided in 1990, nine years prior to Sarvis, and no Massachusetts appellate court had yet spoken on the question. In 1999, the Appeals Court issued Sarvis thus overruling Jones. Before Sarvis, the federal courts predicted that Massachusetts would not hold a private employer vicariously liable under the Massachusetts Civil Rights Statute for civil rights violations committed by an employee as the federal courts had done under §1983. See Lyons v. National Car Rental Systems, Inc., 30 F.3d 240, 245-247 (1st Cir. 1994). Sarvis specifically rejected the federal exclusion of vicarious liability under § 1983 and made corporate entities liable for civil rights violations of their agents. Sarvis, 47 Mass.App.Ct. 86, 94-97.

[4] Lopez primarily concerns civil rights violations of 42 U.S.C. § 1981 and §1983 and 42 U.S.C. § 2000a, federal civil rights statutes under which employers have no vicarious liability for actions of their employees. There was no analysis of how the state claim, to which Sarvis applies, differs from the analysis of the federal claims.

6

Appeals Court affirmed the dismissal of Lopez, it did so in an unpublished opinion and by relying entirely on the memorandum of the Superior Court without any additional analysis. As the Superior Court incorrectly relied upon Jones, which was overruled by the Appeals Court, Lopez is only good law if the Appeals Court meant to reverse Sarvis.[5] However, if the Appeals Court had meant to overrule Sarvis, a case which expressly departed from federal civil rights law, it would not have done so in an unpublished opinion.[6]

Furthermore, as also recognized by Sarvis, corporations may be held vicariously liable for crimes of their agents acting within the scope of their employment. Sarvis, 47 Mass.App.Ct. 86, 96 (citing Commonwealth v. Beneficial Financial Company, 360 Mass. 188, 256-258 (1971)). Given the state of Massachusetts law, the Defendants' argument that they cannot be held liable for "criminal" actions of their employees is disingenuous. Kaplan can bring a civil action against the Defendants under Chapter 272, § 98, and the Defendants' Motion to Dismiss should be denied.

## II. The Statutory Scheme in Chapter 151B Provides for a Civil Remedy Against Corporate Offenders of Section 98.

Chapter 151B, § 5 also creates a civil cause action under Section 98. Section 5 gives persons aggrieved by a violation of Section 98 the right to file a complaint against "the person, **employer**, labor organization or employment agency alleged to have

---

[5] The affirmation by the Appeals Court specifically noted that Lopez was granted leave to amend the complaint prior to the Motion to Dismiss. As the Appeals Court focused on the failures to allege sufficient facts to support the federal claims, its affirmation cannot be read as reversing Sarvis, particularly with the reliance on Jones, an overruled case, to dismiss the Section 98 claim.

[6] Even if Jones and Lopez were good law, they are distinguishable on their facts. Neither Lopez nor Jones involved a corporate policy, executed by employees, which excluded an entire protected class from a place of public accommodation. Rather, they involved plaintiffs who were served or allowed to use the place of public accommodation, but who were forcibly removed after an incident. The behavior of the employees in these cases could be properly considered "rogue" acts. Here, however, by the Defendants' employees carrying out company policy, Kaplan, and all other deaf and hard of hearing people, cannot use a place of public accommodation at all.

7

committed the unlawful practice complained of" [emphasis added] with the MCAD, and empowers the MCAD to investigate and attempt to resolve the alleged violation, file a complaint in the Superior Court seeking injunctive relief, and provide civil remedies for violations of Section 98, including costs and attorney's fees. M.G.L. c. 151B, §5. Chapter 151B, § 9 further provides that any person aggrieved by an unlawful practice within the MCAD's jurisdiction can take remove the action from the MCAD and file it in court for damages or injunctive relief. M.G.L. c. 151B, § 9. As Section 98 violations are within the MCAD's jurisdiction, it is clear that there are civil remedies under Section 98 which those aggrieved can pursue in the courts.

In addition to the clear statutory language, the Massachusetts Appeals Court and Superior Court, in Webster v. TJX Companies and Commonwealth v. Umberto U. (discussed above), have plainly stated that civil causes of action can be sustained for violations of the Massachusetts public accommodations law. See also Scott v. Macy's East, Inc. et al, 2002 WL 31439745 (D.Mass. 2002) (claims of violation of state public accommodations law would have been allowed to go to the jury if sufficient evidence of racial animus had been offered); Donaldson v. Farrakhan et al, 436 Mass. 94 (2002) (exclusion of women from a religious meeting allowed to go to trial); Irish-American Gay, Lesbian and Bisexual Group of Boston v. City of Boston, 418 Mass. 238 (1994) (injunction ordered to stop exclusion of gay/lesbian/bisexual group from parade); Gutierrez v. Massachusetts Bay Transportation Authority et al, 437 Mass. 396, 410 (2002) (analyzing jury instruction offered in case where employees of the MBTA caused violations of Section 98); United States Jaycees v. Massachusetts Commission Against Discrimination, 391 Mass. 594 (1984) (review of MCAD decision finding violations of

Section 98); Local Finance Company of Rockland v. Massachusetts Commission Against Discrimination, 355 Mass. 10 (1968) (review of MCAD decision finding violations of Section 98). Thus, these cases make clear that Section 98 is not merely a criminal statute, and the Defendants can be held liable under its provisions.

The Defendants' argument is not only contrary to the plain language in Section 98, Chapter 151B, and Massachusetts law. Taking the Defendants' argument to its logical conclusion, the MCAD's powers work to eliminate discrimination in public accommodation would be eviscerated. As Section 98 makes public accommodations a civil right, it is a remedial statute. Sarvis, 47 Mass.App.Ct. 86, 97. Chapter 151B, § 5 gives the MCAD, a civil enforcement agency which cannot enforce criminal laws, the ability to take any remedial action required to resolve discrimination in public accommodations. Employers make policies and which their employees follow, meaning the employer must be corrected, not the employees. If corporate entities were not liable under Section 98, MCAD would have no ability to carry out its mission to eliminate discrimination in public accommodations in the Commonwealth. In an analogous situation, discrimination in the workplace, the legislature has put the burden on **employers** to eliminate discrimination by holding them responsible for the acts of their employees. See Thomas v. EDI Specialists, Inc., 437 Mass. 536, 542 (2002) (legislature puts burden on employers to combat discrimination in the workplace by holding them responsible for the discriminatory actions of their employees and that responsibility cannot be shifted back to the employees). Thus, in providing criminal penalties for violations of civil rights, the legislature cannot have intended to have subverted the entire statutory scheme in Chapter 151B, §§ 5 and 9 and to

9

gut the MCAD's mandate to investigate and remedy discrimination in public accommodations.

Finally, the federal Courts interpret Chapter 272, § 98 "'hand in hand' with the interpretation of the Americans with Disabilities Act and the Rehabilitation Act." Lesley v. Chie, 81 F.Supp.2d 217, 226 (D.Mass. 2000) (citing Abbott v. Bragdon, 107 F.3d 934, 937 n.1 (1st Cir. 1997)). The Plaintiff's complaint contains another count pursuant to the Americans with Disabilities Act ("ADA") which the Defendants have not challenged. If interpretation of Chapter 272, §98 goes "hand in hand" with interpretation of the ADA, then Section 98 must be interpreted to provide for civil liability. Thus, the Plaintiff can bring a civil cause of action against Wend and Wendy's.

## CONCLUSION

The two cases the Defendants cite in support of their Motion to Dismiss, whose conclusions were overruled and which fail to make any reference to the statutory interplay between Chapter 151B and Section 98, are not an adequate basis to defy the provision for a civil remedy in Section 98, the entire statutory scheme carefully detailed by the legislature in Chapter 151B, §§ 5 and 9, or the careful reasoning of the Massachusetts Appeals Court in Sarvis. Based upon the foregoing, Kaplan respectfully urges this Honorable Court to deny the Defendants' Motion to Dismiss.

Respectfully submitted,
HOWARD KAPLAN,
By his attorneys,

Shannon Liss-Riordan, BBO #640716
Rebecca G. Pontikes, BBO # 637157
PYLE, ROME, LICHTEN, EHRENBERG, & LISS-RIORDAN P.C.
18 Tremont Street, Suite 500
Boston, Massachusetts 02108
(617) 367-7200

DATE: July 6, 2004

## CERTIFICATE OF SERVICE

This is to certify that on July 1, 2004, a copy of the foregoing document was served upon Kathryn Connors Soderberg, Davis, Malm & D'Agostine, P.C., One Boston Place, Boston, MA 02108 by hand delivery.

Rebecca G. Pontikes

11